**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY MCBEE, | No. C-11-01305 DMR |
| Plaintiff(s), | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL ASTRUE, | |
| Defendant(s). | |

Plaintiff Kimberly McBee appeals the Social Security Administration's ("SSA") final decision on her application for Title XVI Supplemental Security Income ("SSI") disability benefits. Administrative Law Judge ("ALJ") Richard P. Laverdure granted in part and denied in part her application, finding her disabled as of January 1, 2007, but not as of Plaintiff's alleged onset date of January 1, 1998. He simultaneously denied her requests to reopen her two previous SSI applications. Plaintiff now requests judicial review of this decision pursuant to 42 U.S.C. § 405(g). Both parties filed motions for summary judgment. For the reasons stated below, the court denies Plaintiff's motion and grants Defendant's motion.

**I. Procedural History**

Plaintiff first filed for SSI benefits in 1998 after having suffered a severe head injury. The SSA denied her application on September 3, 1998 (A.R. 157), and she did not appeal the decision. She submitted another SSI application, which the SSA denied on June 15, 2004. (A.R. 168.) Again,

United States District Court
For the Northern District of California

1    she did not appeal.  She filed the current application for SSI benefits on February 9, 2006, alleging a

2    disability onset date of January 1, 1998.  (A.R. 140.)  Along with her application, she requested the

3    reopening of her two previous applications.  (*See* A.R. 72.)  The SSA initially denied her application

4    on August 14, 2006 (A.R. 79-83) and again upon reconsideration on March 16, 2007 (A.R. 86-90).

5    On April 9, 2007, she filed a timely request for a hearing before an ALJ.  (A.R. 92.)

6            After the March 5, 2008 hearing ("the Hearing"), the ALJ issued a partially favorable

7    decision, finding Plaintiff disabled as the result of a severe medically determinable personality

8    disorder under Section 12.08 of the Listings as of January 1, 2007.  (A.R. 71-78.)  He made the

9    following findings in reaching his conclusion:  Plaintiff's ample medical records from 1998

10   described her as having minimal impairments upon discharge from treatment and therapy for her

11   head injury.  (A.R. 73-74 (citing A.R. 291, 322.)  In 2000, Plaintiff sought treatment for dizziness,

12   but "a CT scan of her head was negative for any acute changes."  (A.R. 74 (citing 419-420).)  The

13   medical information thereafter waned into a "protracted period without any apparent ongoing

14   treatmentfrom 2001 to 2005 or 2006."  (A.R. 74.)  Thereafter the  medical record evidenced a

15   significant deterioration in Plaintiff's mental health.  Certain mental health evaluations also raised

16   the possibility that Plaintiff was suffering from a neurological disorder, or was malingering or

17   exaggerating.  (A.R. 74-76 (citing A.R. 463-68, 508-20, 539-45).)  The record also revealed that

18   Plaintiff had a history of recurring substance abuse prior to her 1998 head injury until approximately

19   a year before the Hearing.  (A.R. 73-77 (citing A.R. 346, 396, 400, 418, 435, 465-68, 508-20).)

20   During the Hearing, Medical Expert Irwin Shapiro, M.D., testified that he could not disaggregate

21   Plaintiff's mental impairments from her substance abuse prior to January 1, 2007, when Plaintiff

22   claimed to have stopped using drugs.  (A.R. 76.)  The ALJ credited this analysis and, in conjunction

23   with the other record evidence, determined that Plaintiff, though now disabled, "ha[d] failed to carry

24   her burden of proving that she suffered from a severe medically determinable impairment or

25   combination of impairments independent of substance abuse" prior to January 1, 2007.  (A.R. 71

26   (citing 42 U.S.C. § 1382c(a)(3)(J); *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007)).)  He denied her

27   request to reopen her two earlier SSI applications finding that Plaintiff failed to prove mental

28

**United States District Court**
For the Northern District of California

1  incapacity to establish good cause for missing the deadline to request review of the denials of her

2  prior applications. (A.R. 72.)

3        Plaintiff filed a request for review of the ALJ's decision on July 24, 2008 (A.R. 123-39),

4  which the Appeals Council denied on April 27, 2010.  (A.R. 4.)  The ALJ's decision therefore

5  became the final decision of the Commissioner.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d

6  1228, 1231 (9th Cir. 2011).  Plaintiff filed suit in this Court pursuant to § 405(g).

7  **II. Issues Presented**

8        I. Whether substantial record evidence supports the ALJ's determination that Plaintiff did not

9  have a severe medically determinable mental impairment prior to January 1, 2007.

10        II. Whether the ALJ properly considered the testimony of the Medical Expert.

11        III. Whether the ALJ erred in finding insufficient record evidence to show good cause to re-

12  open Plaintiff's prior SSI applications.

13  **III. Standard of Review**

14        The court will uphold an ALJ's disability determination "unless it contains legal error or is

15  not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

16  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a

17  conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is

18  "more than a mere scintilla" but less than a preponderance.  *Id.*  If the evidence reasonably could

19  support two conclusions, the court "may not substitute its judgment for that of the Commissioner"

20  and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation

21  omitted).  When performing this analysis, the court must "consider the entire record as a whole and

22  may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec.*

23  *Admin.*, 466 F.3d 880, 882 (9th Cir.2006) (citation and quotation marks omitted).

24  **IV. Discussion**

25        A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF DID NOT

26  MEET HER BURDEN OF ESTABLISHING A SEVERE MEDICALLY DETERMINABLE MENTAL IMPAIRMENT

27  PRIOR TO JANUARY 1, 2007

28        **1. Plaintiff's Contentions**

United States District Court
For the Northern District of California

1    Plaintiff claims that the ALJ neglected Plaintiff's medical history from 1998 through 2007

2    when reaching his determination that she was disabled only since January 1, 2007.  Plaintiff argues

3    that she has had a disabling impairment since February 1998, as shown by "a medically-documented

4    memory impairment, mood disturbance, and impairment of impulse control, all of which resulted in

5    marked restrictions of activities for daily living, social functioning, concentration, and persistence

6    and pace."  (Pl.'s Mot. 14-15 (citing A.R. 465-68, 508-28, 544-45).)  Plaintiff highlights several

7    areas where she believes the ALJ's erred.[1]  Most pertinently, Plaintiff avers that the ALJ based his

8    decision that she did not have an impairment until January 2007 on "an arbitrary assumption that

9    [she] was repeatedly using drugs until that time, and that any mental impairments were primarily

10   caused by the alleged drug use."  (Pl.'s Mot. 14.)  Plaintiff argues that drug "relapses do not indicate

11   consistent drug abuse" and that a 2004 medical exam which included a negative drug screening and

12   Plaintiff's own testimony counter "the assumption that she had only been drug free for

13   approximately a year."  (Pl.'s Mot. 14 (citing A.R. 438-54).)  Moreover, she contends, without

14   offering record evidentiary support, that "any past drug use is secondary to her mental impairments"

15   and that she turned to drug use to ameliorate the pain of sexual abuse she endured as a child.  (Pl.'s

16   Mot. 18-19.)

17              **2. Applicable Law**

18         The burden of establishing disability generally lies with the SSI applicant.  20 C.F.R.

19   § 416.912(a).  The applicant "must furnish medical and other evidence that [the SSA] can use to

20   reach conclusions" about the individual's medical impairments and their severity.  § 416.912(a) &

21   (c).  When the record demonstrates that substance abuse has occurred in conjunction with alleged

22   disability, the ALJ may not find a claimant disabled "if alcoholism or drug addiction would . . . be a

23   contributing factor material to the . . . determination that the individual is disabled."  42 U.S.C.

24   § 1382c(a)(3)(J); *see* 20 C.F.R. § 416.935 (a) & (b).  The claimant has the burden of showing that

25   she would qualify as disabled absent the substance abuse.  *See Parra*, 481 F.3d at 748.

26

27        [1] Plaintiff repeatedly cites to non-record medical studies to bolster her argument.  (*See* Pl.'s Mot. 15-16, 18-19.)  Because these materials are not record evidence, the court cannot consider them.  *See Albalos v.*

28   *Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990).

**United States District Court**

For the Northern District of California

1    When establishing the onset date of a disability, an ALJ must use "the date alleged by the

2 individual . . . *if it is consistent with all the evidence available. . . .* [T]he established onset date must

3 be fixed based on the facts and *can never be inconsistent with the medical evidence of record.*"

4 *Armstrong v. Comm'r*, 160 F.3d 587, 589 (9th Cir. 1998) (quoting Social Security Ruling ("SSR")

5 83-20) (brackets and ellipses in original) (emphasis added).  In some cases, medical evidence may

6 enable the ALJ to infer the onset of a disabling impairment prior to the date of the first recorded

7 medical examination, but such a decision "must have a legitimate medical basis."  *Id.* (quoting SSR

8 83-20); *see* SSR 83-20 (requiring that inferred onset date "must be fixed based on the facts and can

9 never be inconsistent with the medical evidence of record").

10    **3. Analysis**

11    The ALJ supported his decision to assign Plaintiff a personality disorder disability onset date

12 of January 1, 2007 with substantial evidence.  Although Plaintiff endured a severe head injury on

13 February 24, 1998, substantial record medical evidence from, *inter alia*, examining physicians,

14 speech and occupational therapists, and psychologists supports the ALJ's determination that she

15 recovered relatively quickly with only minimal to mild attention deficits and memory problems.

16 (*See, e.g.*, A.R. 290, 295, 300, 312, 314, 323-24, 378, 436.)  Plaintiff's brief does not direct the court

17 to anything in the record to challenge this finding.  It merely cites to  medical records from mid-

18 2006 onward to support her argument that her onset date should be in 1998.  (*See* Pl.'s Mot. 14-15.)

19 Moreover, while Plaintiff's condition worsened markedly from 2006 onward (*see, e.g.*, A.R. 465-70,

20 476-77, 479, 483-84, 496-97, 510-13, 519, 522-25, 530-38, 543), the record contains scant

21 information between June 1998 and mid-2006 to provide insight into Plaintiff's mental condition

22 during that intervening period.  As set forth in Section B below, the ALJ rejected the argument that

23 the record evidence supported an inference that Plaintiff was disabled throughout the lengthy gap in

24 her medical records, and accepted the opinions offered by the medical expert.  The court recognizes

25 that, alone, the lack of record evidence for treatment for mental disorders does not amount to a

26 "substantial basis" upon which to determine that an claimant did not suffer from a mental

27 impairment.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Nevertheless, a five to

28 six-year gap in the medical record of someone who appeared to seek treatment when needed

United States District Court

For the Northern District of California

1  complicates a finding of mental disability and certainly does not relieve Plaintiff of her duty to

2  provide evidence of her disabling condition.  *See* § 416.912(a) & (c).  Taken as a whole, the record

3  provides substantial evidence to underpin the ALJ's decision not to assign Plaintiff an onset date of

4  January 1, 1998.

5      Furthermore, Plaintiff's well-documented history of methamphetamine and other drug use

6  provided the ALJ with substantial evidence to deem Plaintiff's disability onset date to be January 1,

7  2007.  Soon after her admission to the Highland Campus of the Alameda County Medical Center for

8  physical therapy in late February 1998, Plaintiff tested positive for benzodiazepines and

9  methamphetamine usage.  (A.R. 286.)  She again tested positive for methamphetamine upon

10  admission to Fairmont Hospital, though she "adamantly denie[d] any recent use."  (A.R. 296.)

11  During a March 10, 1998 psychological rehabilitation consultation, she denied drinking or using

12  illicit drugs, though she admitted to "us[ing] amphetamines and smok[ing] marijuana up to one and

13  one-half years ago when she was rehabilitated in a substance abuse program."  (A.R. 300.)  Plaintiff

14  tested positive for marijuana use during a December 2000 drug test (A.R. 418), though she passed a

15  drug test in May 2004.  (A.R. 442.)  In the summer of 2006, she repeatedly was diagnosed with an

16  amphetamine dependence.  (*See, e.g.*, A.R. 467, 469, 496-97.)  Finally, during the Hearing, she

17  admitted to having had drug relapses, most recently in 2007 with methamphetamine and marijuana.

18  (A.R. 21.)  Confronted with this history and Dr. Shapiro's assessment that he could not separate the

19  effects of Plaintiff's drug use from her other mental problems, the ALJ's finding of a January 1,

20  2007 onset date rests upon substantial evidence.

21      B. THE ALJ PROPERLY CONSIDERED THE OPINIONS OF THE MEDICAL EXPERT

22          **1. Plaintiff's Contentions**

23      Plaintiff excoriates several statements made by Dr. Shapiro during the Hearing, and argues

24  that the ALJ inappropriately took them into account in his ruling.  For example, Plaintiff asserts that

25  Dr. Shapiro's statements that "'people do ok with molestations'" and that "'some women who allege

26  they were molested become professors, C.E.O.'s [sic], etc.'" inappropriately implied that rape and

27  assault "are not disabling."  (Pl.'s Mot. 10 (quoting A.R. 43, 56) (emphasis removed).)  Plaintiff also

28  objects to Dr. Shapiro's supposed contention that Plaintiff seeks out romantic partners "'who would

1   assault her'" because "'that's one of her needs.'"  (Pl.'s Mot. 10 (quoting A.R. 45) (emphasis

2   removed).)

3               **2. Analysis**

4           The ALJ did not err by considering Dr. Shapiro's testimony.  Plaintiff repeatedly strips Dr.

5   Shapiro's statements from their context to create the impression that he fails to comprehend the

6   traumas suffered by individuals in her position.  For example, when Dr. Shapiro asserted that

7   "[s]ome people do okay with [molestations]," a fair reading of the full testimony indicates that he

8   did not diminish the potential psychological impact of sexual abuse (A.R. 43); he was commenting

9   on the wide range of psychological effects that traumatic events may have on different people.

10  Plaintiff similarly quotes other comments out of context.

11          The record transcript indicates that Plaintiff's counsel's cross-examination of Dr. Shapiro

12  resulted in a combative exchange and that the ALJ intervened several times.  However, it is clear

13  from the ALJ's comments that he did not give inappropriate weight to Dr. Shapiro's testimony.  The

14  ALJ consistently refocused the questioning to the pertinent inquiry: whether one "can infer

15  retrospectively what [Plaintiff's] functioning might be."  (A.R. 21.)  For example, the ALJ noted that

16  "even if I accept that she's had a personality disorder all her life, we don't have evidence of what her

17  functioning was between 1998 and the present time, and particularly, independent of any substance

18  abuse."  (A.R. 54; *see also* A.R. 61.)  Plaintiff's counsel argued that the record supported an

19  inferential link that if Plaintiff was disabled as of January 2007, she must have been disabled in

20  1998.  (A.R. 61-63.)  Dr. Shapiro opined that people with personality disorders have variable

21  abilities to function and that in Plaintiff's case, there was no evidence of negative functioning

22  between 1998 and 2006 that would support an earlier finding of disability.  Dr. Shapiro opined that

23  Plaintiff's functioning "must have been okay" because she did not seek mental health treatment

24  during that time period, even though she had a history of seeking medical attention when she needed

25  it.  (A.R. 40-41.)  In conjunction with other evidence, the ALJ ultimately accepted Dr. Shapiro's

26  opinion on this issue.  (A.R. 76-77.)  There is no evidence that the ALJ improperly considered the

27  medical expert testimony.

28

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    C. THE ALJ COMMITTED HARMLESS ERROR WHEN HE APPLIED IMPROPER STANDARDS TO

2    EVALUATE PLAINTIFF'S REQUEST TO REOPEN HER PRIOR SSI APPLICATIONS

3        **1. Plaintiff's Contentions**

4        Plaintiff claims that the ALJ improperly denied her request to reopen her first two SSI

5    applications because he "excluded the impairment that disabled [her] from February 1998 to

6    December 31, 2006" in his analysis. (Pl.'s Mot. 11.)  She bolsters this assertion by reiterating the

7    record medical evidence discussed above and by narrating numerous life traumas to support that she

8    had a mental impairment "even prior to the 1998 assault." (Pl.'s Mot. 12.)  She also states that she

9    had no counsel representing her during her first two applications. (Pl.'s Mot. 13.)

10        **2. Applicable Law**

11        Upon of showing of good cause, an ALJ may reopen a Title XVI SSI determination, "which

12    is otherwise final and binding," after twelve months, but within two years, of the date of notice of

13    the initial determination.  HALLEX I-2-9-40 ¶ A.  If a claimant requests a reopening after two years,

14    the ALJ must deny the request.  *Id.* ¶ D.  Under most circumstances, denials of a request to reopen

15    are not subject to judicial review.  § 416.1403(a)(5); *accord Evans v. Chater*, 110 F.3d 1480, 1482

16    (9th Cir. 1997) (citations omitted).  If the denial to reopen "implicate[s] a due process right to a

17    meaningful opportunity to be heard," though, a claimant may appeal the denial to the courts.  *Evans*,

18    110 F.3d at 1482 (citation and quotation marks omitted).  For example, if a claimant alleges that at

19    the time of the adverse ruling, she suffered from a mental impairment which "prevented the making

20    of a timely request for review of an adverse determination" and that she was not represented by

21    counsel in that proceeding, her allegations assert "a colorable constitutional claim."  *Id.* at 1483

22    (citing SSR 91-5p[2]).

23    _____

24        [2] That ruling states, in relevant part, that
            [w]hen a claimant presents evidence that mental incapacity prevented him or her
        from timely requesting review of an adverse determination . . ., and the claimant had no one

25        legally responsible for prosecuting the claim . . . at the time of the prior administrative action,
        SSA will determine whether or not good cause exists for extending the time to request

26        review. If the claimant satisfies the substantive criteria, the time limits in the reopening
        regulations do not apply; so that, regardless of how much time has passed since the prior

27        administrative action, the claimant can establish good cause for extending the deadline to
        request review of that action.

28        The claimant will have established mental incapacity for the purpose of establishing

**United States District Court**
For the Northern District of California

1    **3. Analysis**

2        Although the ALJ seems to have applied an improper standard when he denied Plaintiff's

3    request to reopen her 1998 and 2004 SSI applications, his action amounted to harmless error.  In his

4    SSR 91-5p analysis, the ALJ found that Plaintiff did not meet her burden of demonstrating mental

5    incapacity because she lacked a severe medically determinable mental impairment independent of

6    substance abuse prior to January 1, 2007.  (A.R. 72.)  He also found that Plaintiff had "access to

7    relatives and/or a representative who was/were able to assist her in explaining the notices sent to her

8    by the Administration and who could have assisted her in filing a request for review."  (A.R. 72.)

9    From these conclusions, he determined that Plaintiff failed to show good cause to reopen her

10   previous applications.  (A.R. 72.)

11       The ALJ appears to have erred on two fronts.  First, SSR 91-5p does not require a finding of

12   disability to fulfill the mental incapacity prong of the ruling's test, as the ALJ's conclusions suggest.

13   A claimant must show merely that a "mental impairment prevented the claimant from understanding

14   how to contest the denial of benefits" -- a much lower hurdle than outright disability.  *Klemm v.*

15   *Astrue*, 543 F.3d 1139, 1145 (9th Cir. 2008) (citation omitted).  Second, the ALJ seems to have erred

16   when he treated Plaintiff's friends and family as "legally responsible for prosecuting [her] claim[s]."

17   SSR 91-5p.  Nothing in the record suggests that Plaintiff had counsel or some other formal "legal

18   representative" to aid her in her appeals.  In fact, it appears that she acquired a representative only in

19   October 2006.  (*See* Pl.'s Mot. 13.)  Nevertheless, the court finds that the record lacks substantial

20   evidence that Plaintiff suffered from even the requisite level of mental impairment in 1998 or 2004.

21   *See supra* (examining record evidence between 1998 and 2006).  Because Plaintiff has not met this

22   aspect of the ruling inquiry, she has not shown good cause to reopen her first two SII applications.

23   ─────────────

24       good cause when the evidence establishes that he or she lacked the mental capacity to
         understand the procedures for requesting review.
25           In determining whether a claimant lacked the mental capacity to understand the
         procedures for requesting review, the adjudicator must consider the following factors as they
26       existed at the time of the prior administrative action: . . . —any mental or physical condition
         which limits the claimant's ability to do things for him/herself.
27           The decision as to what constitutes mental incapacity must be based on all the
         pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor
         of the claimant.
28   SSR 91-5p.

9

1   The ALJ's mistakes thus constituted harmless error.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162

2   (9th Cir. 2008).

3   **V. Conclusion**

4   For the reasons above, the court grants Defendant's motion for summary judgment and

5   denies Plaintiff's motion for summary judgment.

6

7   IT IS SO ORDERED.

8

9   Dated: February 14, 2012



10   _____
     DONNA M RYU
11   United States Magistrate Judge

**United States District Court**
For the Northern District of California